USCA1 Opinion

 

 October 6, 1992 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 91-1625 DENNIS J. DOMEGAN, Plaintiff, Appellee, v. JOSEPH PONTE, ET AL., Defendants, Appellants. _____________________ No. 91-1753 DENNIS J. DOMEGAN, Plaintiff, Appellee, v. JOSEPH PONTE, ET AL., Defendants, Appellants. ____________________ ERRATA SHEET ERRATA SHEET The opinion of this Court issued on August 10, 1992, is amended as follows: Page 50, footnote 38, line 1, should read: "Eighth Amendment" instead of "Fifth Amendment" August 10, 1992 ____________________ August 10, 1992 ____________________ No. 91-1625 No. 91-1625 DENNIS J. DOMEGAN, DENNIS J. DOMEGAN, Plaintiff, Appellee, Plaintiff, Appellee, v. v. JOSEPH PONTE, ET AL., JOSEPH PONTE, ET AL., Defendants, Appellants. Defendants, Appellants. _____________________ _____________________ No. 91-1753 No. 91-1753 DENNIS J. DOMEGAN, DENNIS J. DOMEGAN, Plaintiff, Appellee, Plaintiff, Appellee, v. v. JOSEPH PONTE, ET AL., JOSEPH PONTE, ET AL., Defendants, Appellants. Defendants, Appellants. ____________________ ____________________ APPEALS FROM THE UNITED STATES DISTRICT COURT APPEALS FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS FOR THE DISTRICT OF MASSACHUSETTS [Hon. Rya W. Zobel, U.S. District Judge] [Hon. Rya W. Zobel, U.S. District Judge] ___________________ ____________________ ____________________ Before Before Campbell, Circuit Judge, Campbell, Circuit Judge, _____________ Bownes, Senior Circuit Judge, Bownes, Senior Circuit Judge, ____________________ and Cyr, Circuit Judge. and Cyr, Circuit Judge. _____________ ____________________ ____________________ Stephen G. Dietrick, Deputy General Counsel, with whom Nancy Stephen G. Dietrick, Deputy General Counsel, with whom Nancy ____________________ _____ Ankers White, Special Assistant Attorney General, was on brief for Ankers White, Special Assistant Attorney General, was on brief for ____________ appellants defendants. appellants defendants. Paul E. Nemser with whom Paula M. Bagger and Goodwin, Procter & Paul E. Nemser with whom Paula M. Bagger and Goodwin, Procter & ______________ _______________ ___________________ Hoar were on brief for plaintiff appellee. Hoar were on brief for plaintiff appellee. ____ ____________________ ____________________ ____________________ ____________________ 3 3 CYR, Circuit Judge. After former inmate Dennis J. Domegan won CYR, Circuit Judge. _____________ a one dollar damage award in a civil rights action against certain Massachusetts corrections officials, the district court approved an attorney fee award against the defendants in the amount of $41,441.55 under 42 U.S.C. 1988. The defendant officials challenge the fee award primarily on the ground that Domegan cannot be considered a "prevailing party" in light of the results achieved in litigation. With modifications to the amount of the award, we affirm the district court judgment. I I BACKGROUND BACKGROUND __________ On August 15, 1983, while imprisoned at the Massachusetts Correctional Institution at Walpole ("MCI-Walpole"), Domegan lodged a pro se complaint in the United States District Court for ___ __ the District of Massachusetts, alleging civil rights violations under the Eighth and Fourteenth Amendments to the United States Constitution. The complaint stemmed from Domegan's disciplinary placement on the "Alternate Feeding Program" ("AFP") at MCI- Walpole in May and again in July of 1983.1 At that time, each meal served to AFP inmates, including Domegan, consisted entirely ____________________ 1The May placement occurred after Domegan threw his food tray and human waste against the wall outside his cell; in July, he threw his food and tray outside his cell. 4 4 of two cheese sandwiches. The solid steel doors of AFP inmate cells remained closed. The inmate was given no hearing prior to the AFP placement. AFP status was reviewed every five days by the prison official who recommended the particular placement. Domegan remained on AFP for seven and one-half days in May 1983, and for five days in July 1983. During March 1984, the district court appointed Goodwin, Procter & Hoar [hereinafter Procter & Hoar] to represent Domegan. The final amended complaint asserted three causes of action: cruel and unusual punishment (Eighth and Fourteenth Amendments; 42 U.S.C. 1983; M.G.L. c. 12, 11 H,I);2 violation of due _ process (Fourteenth Amendment; 42 U.S.C. 1983; M.G.L. c. 12, 11 H,I); and violation of the Massachusetts Civil Rights Act _ (M.G.L. c. 12, 11 I). The final amended complaint demanded _ declaratory and injunctive relief, compensatory damages totaling $50,000,and$35,000 inpunitivedamagesfromeach ofthetendefendants.3 ____________________ 2Initially, Domegan sought to establish that the AFP was viola- tive of the Eighth Amendment, facially and as applied, but later relinquished the facial claim. The "as applied" claim alleged that the defendant officers and sergeants assigned to the AFP: (i) turned off the electricity to Domegan's cell to prevent him from complying with the AFP regimen for receiving food at meal time; (ii) refused to feed him, knowing that he could not comply with the AFP regimen; and (iii) turned off his water supply. 3The ten defendants named in the final amended complaint were Joseph J. Ponte, Superintendent at MCI-Walpole; Frank Leppert, Administrator of the Department Segregation Unit ("DSU") at MCI- Walpole; Peter Gallagher, Acting DSU Administrator; Sergeants Anthony Silva and James Brooks; and Officers Carl Harrison, Gary Mendes, Christopher Pires, Patrick Smith, and Brian Bissonnette. Three other defendants were named in earlier complaints but were 5 5 Domegan was granted summary judgment on the procedural due process claim. The case proceeded to trial on the remaining claims in March 1989. The jury awarded Domegan $1.00 in "compen- satory" damages on the due process claim, but returned verdicts for all defendants on the remaining Eighth Amendment claims. Judgment was entered in the amount of $1.00 against Ponte, Leppert, and Gallagher.4 Domegan requested attorney fees and costs in the amount of $88,655.16, pursuant to 42 U.S.C. 1988. Although the district court determined that Domegan was a "pre- vailing party" entitled to recover a reasonable attorney fee, it reduced the amount of the award to $41,441.55 in light of the limited success achieved in litigation. The defendants challenge the fee award on several grounds.5 II II ____________________ dropped from the final amended complaint. On November 1, 1983, two and one-half months after Domegan filed his pro se complaint, MCI-Walpole instituted a more varied ___ __ and nutritious menu for AFP inmates. In 1985, MCI-Walpole revised its post-deprivation review procedures, requiring that each AFP inmate's status be reassessed after each meal. On or about October 11, 1988, prior to trial, Domegan was released from state custody, and the claims for injunctive and declaratory relief were not pursued. 4It is not clear why judgment was never entered against the other seven defendants. 5Although judgment was entered only against defendants Ponte, Leppert and Gallagher, the other seven defendants joined the appeal because the attorney fee award ran against "defendants." As Domegan correctly concedes, however, there is no basis for an award against the seven codefendants who were found not liable. Accordingly, we dismiss these seven defendants-appellants. 6 6 DISCUSSION DISCUSSION __________ A. Appellate Jurisdiction A. Appellate Jurisdiction ______________________ The district court "Memorandum and Order" awarding attorney fees was entered on May 24, 1991. A defective notice of appeal (No. 91-1625) was filed on June 24, 1991, naming no appellant except Ponte, and then only in the following caption: "Domegan v. Ponte, et al." See Torres v. Oakland Scavenger Co., 487 U.S. ___ ______ _____________________ 312, 314-15, 318 (1988) (use of "et al." does not satisfy Fed. R. App. P. 3(c) requirement that notice of appeal specify parties appealing); Pontarelli v. Stone, 930 F.2d 104, 108-09 (1st Cir. __________ _____ 1991) (same). In response to our order to show cause why the appeal ought not be dismissed except as to Ponte, on July 16 a motion for permission to file an amended notice of appeal was filed by defendants' counsel with the district court. See Fed. ___ R. App. P. 4(a)(5). The district court granted the motion ex __ parte on the following day. But see id. ("Notice of any such _____ ___ ___ ___ motion which is filed after the expiration of the prescribed time shall be given to the other parties in accordance with local rules."). See also D. Mass. R. 7.1(a)(2),(b),(e). An amended ___ ____ notice of appeal (No. 91-1753), naming all ten appellants, was promptly filed. Domegan contends that the ex parte district court order, __ _____ permitting appellants to file a corrected notice of appeal after the expiration of the original appeal period, was ineffective 7 7 since the fourteen-day notice required by Local Rule 7.1 was not served. See Fed. R. App. P. 4(a)(5); D. Mass. R. 7.1(a)(2), (b), ___ (e); see also, e.g., Hable v. Pairolero, 915 F.2d 394, 395 (8th ___ ____ ____ _____ _________ Cir. 1990) (requiring notice of rule 4(a)(5) motion); Truett v. ______ Johns-Manville Sales Corp., 725 F.2d 1301, 1302 (11th Cir. 1984) __________________________ (same). Domegan also challenges the sufficiency of the showing of "good cause" or "excusable neglect" required under Fed. R. App. P. 4(a)(5). See, e.g., Pontarelli, 930 F.2d at 109-112. We ___ ____ __________ need not address Domegan's contentions, however, as the initial notice of appeal was premature. The district court "Memorandum and Order," entered May 24, did not satisfy the "separate document" rule. See Fed. R. Civ. P. 58 ___ advisory committee note (1963) ("The amended rule . . . requir[e- s] that there be a judgment set out on a separate document distinct from any opinion or memorandum which provides the ________ ____ ___ _______ __ __________ basis for the entry of judgment.") (emphasis added); Fiore v. _____ Washington County Community Mental Health Ctr., 960 F.2d 229, _________________________________________________ 234-35 (1st Cir. 1992) (en banc) (discussing generally the nature of a separate document); Smith v. Massachusetts Dep't of Correc- _____ ______________________________ tion, 936 F.2d 1390, 1393-94 (1st Cir. 1991) (memorandum and ____ order does not constitute "separate document"); In re Smith ____________ Corset Shops, Inc., 696 F.2d 971, 975 (1st Cir. 1982) (same, ___________________ applying analogous Bankruptcy Rule). As the order appealed from was not a "final judgment," see Fed. R. Civ. P. 54(a), 58, the ___ appeal period never commenced running prior to the filing of the 8 8 corrected notice of appeal. Fed. R. App. P. 4(a)(1), (7); Smith, _____ 936 F.2d at 1394; Scola v. Boat Frances, R., Inc., 618 F.2d 147, _____ ______________________ 151 (1st Cir. 1980); see also Bankers Trust Co. v. Mallis, 435 ___ ____ __________________ ______ U.S. 381, 384-86 (1978) (per curiam) (purpose of "separate document" rule is to promote greater predictability as to when time for appeal begins to run); Fiore, 960 F.2d at 233 (same).6 _____ Although appellants at all times treated the May 24 "Memorandum and Order" as an appealable order, the "separate document" rule is to be strictly applied as concerns the commencement of the appeal period. See United States v. Indrelunas, 411 U.S. 216, ___ ______________ __________ 221-22 (1973) (per curiam) (applying rule 58 mechanically not- withstanding previous aborted appeal by same appellant within appeal period); Fiore, 960 F.2d at 235 (discussing technicality _____ of rule 58); Gregson & Assocs. Architects v. Government of the _____________________________ _________________ V.I., 675 F.2d 589, 592-93 (3d Cir. 1982) (Indrelunas applied ____ __________ despite both parties' treatment of memorandum opinion as appeal- able order); Caperton v. Beatrice Pocahontas Coal Co., 585 F.2d ________ _____________________________ 683, 688-90 (4th Cir. 1978) ("nor are we free to penalize plain- tiffs . . . by binding them to their erroneous assertion that judgments" had been entered); see also Fiore, 960 F.2d at 237 ___ ____ _____ ____________________ 6We raise the "separate document" issue sua sponte, as it is ___ ______ intertwined with Domegan's jurisdictional challenge. See, e.g., ___ ____ Caperton v. Beatrice Pocahontas Coal Co., 585 F.2d 683, 688-89 ________ _____________________________ (4th Cir. 1978) (raising "separate document" issue sua sponte); ___ ______ see also Parisie v. Greer, 705 F.2d 882, 890-91 (7th Cir.) ___ ____ _______ _____ (Eschbach, J.) (discussing duty of court to raise "separate document" issue sua sponte), cert. denied, 464 U.S. 918, and ___ ______ _____ ______ ___ cert. denied, 464 U.S. 950 (1983). _____ ______ 9 9 (emphasizing that the "separate document" requirement "should always be interpreted 'to prevent loss of the right to appeal, not to facilitate loss'") (quoting Bankers Trust, 435 U.S. at ______________ 386); Willhauck v. Halpin, 919 F.2d 788, 792 (1st Cir. 1990) _________ ______ (same); 9 Moore's Federal Practice 58.02.1[2], at 58-20 to 21. ________________________ Nevertheless, a notice of appeal deemed premature due to noncom- pliance with the "separate document" rule does not deprive the appellate court of subject matter jurisdiction, Bankers Trust, _____________ 435 U.S. at 384, 385; see also Smith, 936 F.2d at 1394 (applying ___ ____ _____ Bankers Trust), and the appeal may proceed in the normal course _____________ where the court of appeals determines that the "separate docu- ment" requirement was waived by the parties. Bankers Trust, 435 _____________ U.S. at 384-86; Smith, 936 F.2d at 1394. _____ The district court treated its May 24 "Memorandum and Order" as an appealable order; it was duly docketed; and no party chal- lenged appellate jurisdiction for failure to comply with the "separate document" requirement. See Smith, 936 F.2d at 1394 ___ _____ (finding waiver); see also Bankers Trust, 435 U.S. at 387-88 ___ ____ _____________ (considering same factors). Compare Fiore, 960 F.2d at 232, 237. _______ _____ All parties to the present appeal consistently treated the May 24 "Memorandum and Order" as a final judgment and there is no suggestion that unfair prejudice would be occasioned any party by our assertion of appellate jurisdiction, without remanding for formal compliance with the "separate document" requirement. See ___ Smith, 936 F.2d at 1394 (assertion of appellate jurisdiction _____ 10 10 proper, as parties waived "separate document" requirement and would not be prejudiced). Moreover, dismissal of the second notice of appeal in these circumstances, solely to permit compli- ance with the "separate document" rule, would force "[w]heels [to] spin for no practical purpose." Bankers Trust, 435 U.S. at _____________ 385; Smith, 936 F.2d at 1394 ("We will not needlessly 'force the _____ parties round and round the mulberry bush' . . . ." (quoting Jusino v. Zayas, 875 F.2d 986, 989-90 (1st Cir. 1989)). ______ _____ B. The Merits B. The Merits __________ 1. "Prevailing Party" 1. "Prevailing Party" ________________ The principal focus of appellants' discontent with the fee allowance in the instant case is that the district court deter- mined that Domegan was a "prevailing party" even though he obtained only a one dollar damage award. Absent "special circum- stances" which would render an award unjust, ordinarily a civil rights plaintiff who qualifies as a "prevailing party" is enti- tled to a reasonable award of attorney fees under 42 U.S.C. 1988.7 Hensley v. Eckerhart, 461 U.S. 424, 429 (1983); de Jesus _______ _________ ________ v. Banco Popular de Puerto Rico, 918 F.2d 232, 234 (1st Cir. ______________________________ 1990); Stefan v. Laurenitis, 889 F.2d 363, 370 (1st Cir. 1989). ______ __________ ____________________ 7Section 1988 provides, in part: "In any action or proceeding to enforce a provision of section[] . . . 1983 . . ., the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." 42 U.S.C. 1988. 11 11 A prevailing party is one who "has succeeded on 'any signifi- cant issue in litigation which achieve[d] some of the benefit the [plaintiff] sought in bringing suit'. . . ." Texas State Teach- __________________ ers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 791-92 __________ __________________________ (1989) [hereinafter Texas Teachers] (quoting Nadeau v. Helgemoe, ______________ ______ ________ 581 F.2d 275, 278-79 (1st Cir. 1978)). "[A]t a minimum . . . the plaintiff must be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant." Id. at 792. Moreover, even under this "generous ___ formulation," as the Court stated in Texas Teachers, the plain- ______________ tiff cannot qualify as a "prevailing party" if his "success on a legal claim can be characterized as purely technical or de __ minimis . . . ." Id. "The touchstone of the prevailing party _______ ___ inquiry must be the material alteration of the legal relationship ___________________ of the parties in a manner which Congress sought to promote in _____ ________ ______ __ _______ __ the fee statute." Id. at 792-93 (emphasis added). ___ ___ _______ ___ The district court determination that Domegan met the "prevailing party" test is subject to de novo review. See __ ____ ___ Romberg v. Nichols, 953 F.2d 1152, 1156 (9th Cir. 1992) ("We must _______ _______ reverse . . . if the district court applied incorrect legal standards to reach [the factual findings underlying its "prevail- ing party" determination]."); Guglietti v. Secretary of Health & _________ _____________________ Human Services, 900 F.2d 397, 399 (1st Cir. 1990) (where normal ______________ deference due EAJA fee award could not be accorded because district court misapprehended the record, court of appeals would 12 12 decide case, rather than remand, as the facts were not in genuine dispute and the "prevailing party" question is "largely one of law . . ."). But cf. McDonald v. Secretary of Health & Human ___ ___ ________ ____________________________ Services, 884 F.2d 1468, 1474 (1st Cir. 1989) ("abuse of discre- ________ tion" standard governs review of "prevailing party" determination in EAJA fee award cases).8 Although Domegan met with no success on the Eighth Amendment and state law claims, he obtained a favorable verdict on the ____________________ 8McDonald broadly established an "abuse of discretion" standard ________ of review for all "prevailing party" determinations in EAJA cases. As subsequently demonstrated in Guglietti, however, _________ certain aspects of the "prevailing party" determination in a particular case may turn solely on the proper legal standard, making de novo review appropriate. The "prevailing party" __ ____ determination in the present case does not entail any of the considerations which led us to apply a deferential standard of review in McDonald. Nor does it involve fact-based inquiries ________ like those we found appropriate for deferential review in Langton _______ v. Johnston, 928 F.2d 1206, 1225 (1st Cir. 1991) (district court ________ assessment of causation and materiality elements in the "cata- lyst" test) ( 1988 award). The only question in the present case is whether a judgment for one dollar in damages entitles Domegan to "prevailing party" status. The facts are not in dispute, see Guglietti, 900 F.2d at 399, and application of the ___ _________ "prevailing party" test presents a pure question of law warrant- ing plenary review. Moreover, as we have explained, the district court's discretion to deny a fee award to a "prevailing party" under section 1988 is narrowly circumscribed: Despite the explicit grant of discretion in section 1988, it is well-established [sic] that a court may not deny an award ___ ___ of attorney's fees to a prevailing civil rights plaintiff in the absence of special circumstances rendering the award unjust, and this court requires findings of fact and conclu- sions of law identifying the special circumstances and ex- plaining why an award would be inappropriate. de Jesus, 918 F.2d at 234 (citations omitted) (emphasis added). ________ 13 13 procedural due process claim, a "significant issue in litiga- tion." See Langton v. Johnston, 928 F.2d 1206, 1226 (1st Cir. ___ _______ ________ 1991) (assessing significance "given the scope and tenor of the litigation as a whole").9 Appellants insist, nonetheless, that the final judgment cannot have had any significant effect on their legal relationship with Domegan, and question how a one dollar damage award can be considered other than de minimis __ _______ success. Although one dollar most assuredly is a nominal amount, the final judgment nonetheless represented "some" of the benefit ____________________ 9Appellants attempt to demonstrate the de minimis nature of __ _______ Domegan's one dollar "compensatory" damage award on the procedur- al due process claim against three defendants by pointing out that he asserted 42 "defendant/counts" at the "height" of the litigation. The same sort of argument was made by the defendants in Rogers v. Okin, 821 F.2d 22 (1st Cir. 1987), cert. denied, 484 ______ ____ ____ ______ U.S. 1010 (1988). In rejecting their contention, this court stated that the defendants had "adopted the kind of 'mathematical approach' criticized in [Hensley v. Eckerhart, 461 U.S. 424, 435- _______ _________ 36 n.11 (1983)] . . . ." Id. at 25. Along the lines explained ___ in Rogers, "prevailing party" success cannot be measured by an ______ arithmetic comparison of the claims and defendants joined in the complaint with the number of claims and defendants named in the final judgment. Id. (rejecting defendants' attempt to minimize ___ plaintiffs' success by claiming victory on "no fewer than 224" issues); see Hensley, 461 U.S. at 435-36 n.11 (mathematical ___ _______ comparison of the total number of issues in a case with those actually won "provides little aid in determining what is a reasonable fee in light of all the relevant factors"), quoted in ______ __ Rogers, 821 F.2d at 25. Domegan's procedural due process claim ______ doubtless represented a significant constitutional claim in qualitative terms. We cannot treat the quantitative dimensions of the relief obtained on the due process claim as dispositive of the allowability, vel non, of a 1988 fee award, as distin- ___ ___ guished from the reasonableness of the amount awarded. Texas _____ Teachers, 489 U.S. at 790, 793 ("the degree of the plaintiff's ________ overall success" goes to the reasonableness, not the allowability of the award); Nadeau v. Helgemoe, 581 F.2d 275, 281 (1st Cir. ______ ________ 1978) (some fee award appropriate where success is but partially ____ attributable to plaintiff's lawsuit). 14 14 sought in the litigation; namely, an enforceable judgment against the defendant officials who deprived the plaintiff of the consti- tutional right to due process of law. We are unable to agree that an enforceable judgment for nominal damages redressing significant procedural due process violations cannot qualify the plaintiff for "prevailing party" status.10 a. Baseline Criteria a. Baseline Criteria _________________ Prior to Texas Teachers at least, attorney fees were not _______________ withheld under section 1988 simply because the plaintiff merely obtained a nominal damage award. Perez v. University of Puerto _____ _____________________ ____________________ 10Similarly, the Supreme Court has never intimated that a valid final judgment declaring a violation of a claimant's civil rights constituted "purely technical or de minimis" success simply __ _______ because no compensatory damage award or injunctive relief was obtained. Rather, presumably in recognition of the fact that the wrong occasioned by a procedural due process violation often is not susceptible to monetary measurement, the Court has stated that plaintiffs who establish a procedural due process violation "nevertheless will be entitled to recover nominal damages not to ________ exceed one dollar . . . ." Carey v. Piphus, 435 U.S. 247, 267 _____ ______ (1978) (emphasis added); Maldonado Santiago v. Velazquez Garcia, __________________ _________________ 821 F.2d 822, 829 (1st Cir. 1987). (citing Carey). See Memphis _____ ___ _______ Community Sch. Dist. v. Stachura, 477 U.S. 299, 308 n.11 (1986) ____________________ ________ (Nominal damages "are the appropriate means of 'vindicating' rights whose deprivation has not caused actual, provable inju- ry"); see also, e.g., Fassett by and through Fassett v. Haeckel, ___ ____ ____ ______________________________ _______ 936 F.2d 118, 121 (2d Cir. 1991) (Fourth Amendment violation); Floyd v. Laws, 929 F.2d 1390, 1401-03 (9th Cir. 1991) (violation _____ ____ of "constitutional rights"); Cowans v. Wyrick, 862 F.2d 697, 699, ______ ______ 700 (8th Cir. 1988) (Eighth Amendment violation); Farrar v. Cain, ______ ____ 756 F.2d 1148, 1152 (5th Cir. 1985) (violation of "civil rights"); Kincaid v. Rusk, 670 F.2d 737, 746 (7th Cir. 1982) _______ ____ (violation of due process and First Amendment); McGhee v. Draper, ______ ______ 639 F.2d 639, 646 (10th Cir. 1981) (due process violation). But ___ cf. Ganey v. Edwards, 759 F.2d 337, 339 (4th Cir. 1985) (award of ___ _____ _______ nominal damages left to jury). 15 15 Rico, 600 F.2d 1, 2 (1st Cir. 1979) ("Fees may not be denied ____ simply because only nominal damages are awarded."); Ganey v. _____ Edwards, 759 F.2d 337, 339-40 (4th Cir. 1985) (liability determi- _______ nation need not even be accompanied by nominal damage award); Burt v. Abel, 585 F.2d 613, 618 (4th Cir. 1978) (nominal damage ____ ____ award sufficient); Basiardanes v. City of Galveston, 682 F.2d ___________ __________________ 1203, 1220 (5th Cir. 1982) (judgment for nominal damages may warrant fee award); Skoda v. Fontani, 646 F.2d 1193, 1194 (7th _____ _______ Cir. 1981) (per curiam) ($1.00 judgment satisfies "prevailing party" requirement); Hogue v. Clinton, 791 F.2d 1318, 1323 (8th _____ _______ Cir.) (absent proof of actual injury, plaintiff should be granted nominal damages and attorney fees), cert. denied, 479 U.S. 1008 _____ ______ (1986); Scofield v. City of Hillsborough, 862 F.2d 759, 766 (9th ________ ____________________ Cir. 1988) (attorney fees allowable solely on basis of nominal damage award); see Derr v. Gulf Oil Corp., 796 F.2d 340, 344 ___ ____ _______________ (10th Cir. 1986) (Title VII case citing Nephew v. City of Aurora, ______ ______________ 766 F.2d 1464, 1466 (10th Cir. 1985)), a 1988 case subsequently reversed on other grounds, 830 F.2d 1547 (10th Cir. 1987) (en banc); nominal damage award entitled plaintiff to attorney fees); Garner v. Wal-Mart Stores, Inc., 807 F.2d 1536, 1539 (11th Cir. ______ ______________________ 1987) (Title VII case; nominal damage award confers "prevailing party" status). But compare Huntley v. Community Sch. Bd., 579 ___ _______ _______ ___________________ F.2d 738, 742 (2d Cir. 1978) (district court did not abuse ________ _____ discretion in determining that $100 damage award on procedural due process claim amounted, at most, to "moral victory") with ____ 16 16 Milwe v. Cavuoto, 653 F.2d 80, 84 (2d Cir. 1981) (nominal damage _____ _______ award on constitutional claim stemming from official misconduct "sufficient to support an award of fees") (alternate holding). Much as the Fifth Circuit recently pointed out, however, in Estate of Farrar v. Cain, 941 F.2d 1311, 1317 (5th Cir. 1991), ________________ ____ cert. granted sub nom. Farrar v. Hobby, 112 S. Ct. 1159 (1992), ____ _______ ___ ____ ______ _____ all of the cases cited above, except Scofield, antedate Texas ________ _____ Teachers as well as Hewitt v. Helms, 482 U.S. 755 (1987), and ________ ______ _____ Rhodes v. Stewart, 488 U.S. 1 (1988) (Per Curiam). Furthermore, ______ _______ the courts of appeals which have been presented with the issue in the wake of Texas Teachers have drifted apart.11 Compare Rom- ______________ _______ ____ berg v. Nichols, 953 F.2d 1152, 1159 (9th Cir. 1992) ("a nominal ____ _______ damages award does not a nominal victory make"); Fassett by and _______________ through Fassett v. Haeckel, 936 F.2d 118, 122 (2d Cir. 1991) (fee _______________ _______ award appropriate where nominal damages are recovered for depri- vation of an absolute constitutional right) (citing Ruggiero v. ________ Krzeminski, 928 F.2d 558, 564 (2d Cir. 1991)) with Estate of __________ ____ _________ Farrar, 941 F.2d at 1315-17 (nominal damage award represents de ______ __ minimis success where sole purpose of lawsuit was recovery of _______ ____ damages); Spencer v. General Electric Co., 894 F.2d 651, 662 (4th _______ ____________________ ____________________ 11The Fourth and Fifth Circuits have concluded, contrary to their pre-Texas Teachers precedent, that a nominal damage award alone ______________ cannot confer "prevailing party" status. See Denny v. Hinton, ___ _____ ______ 131 F.R.D. 659, 662-63 (M.D.N.C. 1990), aff'd mem., Denny v. _____ ____ _____ Elliott, 937 F.2d 602 (4th Cir.), and aff'd mem. Lawrence v. _______ ___ _____ ___ ________ Hinton, 937 F.2d 603 (4th Cir. 1991); Estate of Farrar, 941 F.2d ______ ________________ at 1315 (where sole purpose of lawsuit was to recover damages). ____ 17 17 Cir. 1990) (dicta) (indicating that $1.00 judgment might con- stitute de minimis success absent any other favorable litigation __ _______ result); Denny v. Hinton, 131 F.R.D. 659, 662-63 (M.D.N.C. 1990) _____ ______ (nominal damage award constitutes de minimis success), aff'd __ _______ _____ mem., Denny v. Elliott, 937 F.2d 602 (4th Cir. 1991), and Law- ____ _____ _______ ___ ____ rence v. Hinton, 937 F.2d 603 (4th Cir. 1991). See also Brewer _____ ______ ___ ____ ______ v. Chauvin, 938 F.2d 860, 864 (8th Cir. 1991) (citing Hogue v. _______ _____ Clinton, 791 F.2d 1318 (8th Cir. 1986)). _______ As Texas Teachers explains, in order for a claimant to qualify ______________ for "prevailing party" status the litigation must achieve, at a minimum, a "material alteration" in the legal relationship between the parties. Texas Teachers, 489 U.S. at 792. The Court ______________ in Texas Teachers limned its "material alteration" standard, in _______________ broad outline, through reference to two earlier cases, see id. ___ __ (discussing Hewitt v. Helms, 482 U.S. 755 (1987), and Rhodes v. ______ _____ ______ Stewart, 488 U.S. 1 (1988) (Per Curiam)), to which we now turn. _______ In Hewitt v. Helms, 482 U.S. 755 (1987), a prison inmate ______ _____ commenced a section 1983 action for damages, as well as declara- tory and injunctive relief, alleging due process violations by prison officials. Helms was released on parole prior to any decision by the district court, and the district court later entered summary judgment against Helms. The Third Circuit _______ reversed on the ground that Helms had been denied due process. The court of appeals ordered the case remanded for entry of judgment in favor of Helms, except as to any defendant determined 18 18 entitled to qualified immunity. Prior to the actual remand to the district court, however, the defendant prison officials secured a favorable Supreme Court decision dismissing one of Helms' claims. After remand from the Supreme Court, the Third Circuit reaffirmed its earlier holding on the other due process claim and again remanded to the district court on the issue of qualified immunity. On remand, Helms did not pursue injunctive relief. The district court once again entered summary judgment against Helms, on the ground that the defendants were immune from liability for damages, and denied a fee award under section 1988. The Third Circuit again reversed, on the ground that its earlier interlocutory ruling that Helms' due process rights had been violated constituted significant success. The Supreme Court disagreed. Justice Scalia pointed out that Helms had obtained no relief whatever on any claim in litigation no judgment, no damages, no injunctive relief, and no declara- tory relief. "The most that he obtained was an interlocutory _____________ ruling that his complaint should not have been dismissed for failure to state a constitutional claim." Hewitt, 482 U.S. at ______ 760 (emphasis added). The Supreme Court refused to equate the Third Circuit ruling with declaratory relief, since the inter- locutory ruling could not conceivably alter the legal relation- _____ ___ 19 19 ship between the parties12 in the face of a final judgment "against the plaintiff . . ., " id. at 763 (emphasis added), and _______ ___ _________ ___ the litigation resulted in no other "relief" which "affect[ed] ______ __ the behavior of the defendant[s] towards the plaintiff," id. at ___ ________ __ ___ _________ _ _______ ___ _________ ___ 761 (emphasis in original). We are not persuaded that Hewitt can be considered analogous ______ authority for withholding "prevailing party" status on the ground that a final judgment for nominal damages is no different than the Third Circuit interlocutory ruling declaring a violation of Helms' due process rights. Moreover, as the Court clearly explained in Hewitt: ______ Respect for ordinary language requires that a plaintiff receive at least some relief on the merits of his claim before he can be said to prevail. See Hanrahan v. Hampton, ___ ________ _______ 446 U.S. 754, 757 (1980). Helms obtained no relief. Because of the defendants' official immunity he received no damages award. No injunction or declaratory judgment was entered in his favor. Nor did Helms obtain relief without benefit of a formal judgment for example, through a consent decree or settlement. See Maher v. Gagne, 448 U.S. 122, 129 (1980). ___ _____ _____ The most that he obtained was an interlocutory ruling that his complaint should not have been dismissed for failure to state a constitutional claim. That is not the stuff of which legal victories are made. Cf. Hanrahan, supra, at 758-59. __ ________ _____ ____________________ 12It is to this same discussion in Hewitt, 482 U.S. at 760-61, ______ that the Court cites in Texas Teachers, 489 U.S. at 792, to ______________ explicate its threshold standard for "prevailing party" status under 42 U.S.C. 1988. We consider it no happenstance that Texas Teachers and Hewitt both cite to Hanrahan v. Hampton, 446 ______________ ______ ________ _______ U.S. 754 (1980) (Per Curiam), and its seminal discussion of the threshold test for "prevailing party" status. See infra at note ___ _____ 13. 20 20 482 U.S. at 760.13 ____________________ 13In Hanrahan, 446 U.S. at 756-57, the Supreme Court reversed a ________ 1988 fee award made pendente lite to appellate counsel, on the ________ ____ ground that all rulings favorable to the plaintiffs were inter- locutory and procedural. The Court noted that it seems clearly to have been the intent of Congress to permit such an interlocutory award only to a party who has established his entitlement to some relief on the merits of ___________ ___ ___________ __ ____ ______ __ ___ ______ __ his claims, either in the trial court or on appeal. The ___ ______ congressional Committee Reports described what were consid- ered to be appropriate circumstances for such an award by reference to two cases Bradley v. Richmond School Board, _______ ______________________ 416 U.S. 696 (1974), and Mills v. Electric Auto-Lite Co., 396 _____ ______________________ U.S. 375 (1970). S. Rep. No. 94-1011, [p.] 5 [(1976)]; H.R. Rep. No. 94-1558, [p.] 8 [(1976)]. In each of those cases the party to whom fees were awarded had established the ___ liability of the opposing party, although final remedial _________ __ ___ ________ _____ ________ orders had not been entered. Id. at 757 (emphasis added). Texas Teachers, 489 U.S. at 790-92, ___ ______________ reaffirms this essential element of the "prevailing party" test, which was discussed not only in Hanrahan, 446 U.S. at 757, but in ________ Hewitt, 482 U.S. at 760, as well. ______ Furthermore, as Hanrahan indicates, in Mills v. Electric Auto- ________ _____ ______________ Lite Co., 396 U.S. 375 (1970), the Court deemed an interim fee ________ _______ award appropriate once liability had been determined, even though _________ "the question of relief [would] await further proceedings . . . .;" that is, even though no order directing relief had yet been granted. It is particularly noteworthy, we believe, that Mills _____ is cited with approval in the companion Senate Report accompany- ing 1988, as well as in the House Report, since the latest Supreme Court pronouncement on the subject states that "[t]he touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties in a manner __ _ ______ which Congress sought to promote in the fee statute." Texas _____ ________ ______ __ _______ __ ___ ___ _______ _____ Teachers, 489 U.S. at 793 (emphasis added). Of course, the ________ Hewitt citation to Hanrahan illuminates the reason Helms could ______ ________ not possibly have been granted "prevailing party" status, since ________ he never established entitlement to any relief. _____ ___________ Finally, the Supreme Court observed in Hanrahan: ________ It seems apparent from these passages that Congress intended to permit the interim award of counsel fees only when a party has prevailed on the merits of at least some of his claims. For only in that event has there been a determination of the _____________ 'substantial rights of the parties,' which Congress deter- 21 21 The Fifth Circuit recently vacated a section 1988 fee award to plaintiffs whose only relief on the merits of their claims was a judgment for nominal damages, stressing "the principles set forth in [Hewitt] and applied in Rhodes [v. Stewart] . . . ." Estate ______ ______ _______ ______ of Farrar v. Cain, 941 F.2d at 1311, 1317 (5th Cir. 1991), cert. _________ ____ ____ granted sub nom., Farrar v. Hobby, 112 S. Ct. 1159 (1992). With _______ ___ ____ ______ _____ respect, and recognizing the closeness of the question, we would ascribe a somewhat different intendment to the principles enunci- ated in Hewitt and applied in Rhodes; that is, as not precluding ______ ______ "prevailing party" status for the claimant who obtains sufficient relief to effect a material alteration in the legal relationship out of which the claim for relief arose. In other words, we think the principles enunciated in Hewitt portend no significant ______ departure from earlier Supreme Court criteria for determining "prevailing party" status on the part of a plaintiff who obtains an enforceable judgment for nominal damages on a significant constitutional claim.14 ____________________ mined was a necessary foundation for departing from the usual rule in this country that each party is to bear the expense of his own attorney. Hanrahan, 446 U.S. at 757-58 (emphasis added) (quoting H.R. No. ________ 94-1558, p. 8 (1976)). 14Prior to Hewitt, the Court held that "liability on the merits ______ _________ and responsibility for fees go hand in hand; where a defendant has not been prevailed against, either because of legal immunity _______ __ _____ ________ or on the merits, 1988 does not authorize a fee award against that defendant." Kentucky v. Graham, 473 U.S. 159, 165 (1985) ________ ______ (emphasis added). See also Supreme Court of Virginia v. Consum- ___ ____ _________________________ _______ ers Union of the United States, Inc., 446 U.S. 719, 738-39 (1980) ____________________________________ 22 22 The other Supreme Court case discussed in Texas Teachers is ______________ Rhodes v. Stewart, 488 U.S. 1 (1988) (Per Curiam), a section 1983 ______ _______ action in which two prison inmates obtained a judgment declaring that their First and Fourteenth Amendment rights had been violat- ed by prison officials who failed to comply with prison adminis- trative procedures regulating magazine subscriptions by inmates. The district court judgment ordered compliance and awarded attorney fees. The Sixth Circuit affirmed the section 1988 fee award. The Supreme Court reversed, observing that "[t]he case _ __ ____ was moot before judgment issued, and the judgment therefore ___ ____ ______ ________ ___ ___ ________ _________ afforded the plaintiffs no relief whatsoever[,]" id. at 4 (empha- ________ __ ______ __________ ___ sis added), since one plaintiff-inmate died and the other was released from custody prior to judgment. Whatever relief other inmates might realize from the judgment,15 the plaintiffs, as former inmates, realized no relief and, therefore, were not ______ entitled to "prevailing party" status. Id. Thus, we think ___ ____________________ (overturning 1988 fee award premised on conduct for which defendants possessed absolute legislative immunity). 15In the instant case, notwithstanding that the challenged AFP procedures were revised within three months after the filing of the pro se complaint, Domegan does not contend that an informal ___ __ alteration in the parties' legal relationship was occasioned by the litigation. See Nadeau, 581 F.2d at 281 ("We . . . consider ___ ______ the chronological sequence of events to be an important, although clearly not definitive factor, in determining whether or not defendant can be reasonably inferred to have guided his actions in response to plaintiff's lawsuit."); see also Langton, 928 F.2d ___ ____ _______ at 1225 ("'the mere existence of a temporal coincidence . . . cannot alone suffice' to engage the gears of the catalyst test.") (quoting Martinez v. Rhode Island Housing & Mortgage Finance ________ __________________________________________ Corp., 628 F. Supp. 996, 1001 (D.R.I. 1986)). _____ 23 23 Rhodes signifies no different result in the present context than ______ would have been required under its predecessor, Hewitt. ______ At this point in our analysis, as we see it, the baseline standard for "prevailing party" status set out in Texas Teachers _______________ has been met. Domegan obtained an enforceable final judgment affording at least some relief against the defendant corrections officials who violated his procedural due process rights.16 Furthermore, we consider the nominal damage award not only "some relief on the merits" of a significant constitutional claim, see ___ Texas Teachers, 489 U.S. at 792 (quoting Hewitt, 482 U.S. at _______________ ______ 760),17 but relief commensurate with the intrinsically-nonpecu- ____________________ 16We recognize, of course, that one dollar is a nominal amount. Yet we cannot think that a nominal damage award does not repre- sent "some relief," particularly where the significance of the constitutional claim and the nature of the established depriva- tion are not susceptible to monetary measurement. Thus, we believe we must recognize that the nominal damage award does not warrant an inference that the fact-finder intended to minimize the seriousness of the wrong done, or the substantiality of the relief intended, since the intangible nature of the absolute constitutional injury in the instant case is not measurable in monetary terms. 17Cf. Walker v. Anderson Elec. Connectors, 944 F.2d 841, 843 n.4 ___ ______ _________________________ & 845-47 (11th Cir. 1991) (upholding denial of fee award where Title VII jury found that defendant's sexual harassment had not been the proximate cause of any lost work, thereby precluding even a nominal damage award; where court stated that "an award of nominal damages . . . would make the prospect of obtaining attorney fees much easier . . . ."), petition for cert. filed, 60 ________ ___ _____ _____ U.S.L.W. 3800 (U.S. May 8, 1992) (No. 91-1794); Warren v. Fan- ______ ____ ning, 950 F.2d 1370, 1375 (8th Cir. 1991) (where money damages ____ alone were requested, and jury found Eighth Amendment violation, plaintiff "and his counsel . . . have no one to blame but them- selves for the jury's decision not to award nominal damages," since they proposed a jury instruction which left any nominal damage award to the discretion of the jury, even though applica- 24 24 niary procedural due process deprivation established in litiga- tion.18 b. Purely Technical or de minimis Success b. Purely Technical or de minimis Success ______________________________________ Notwithstanding the majority view prevailing among the courts of appeals allowing section 1988 attorney fee awards based on an enforceable judgment for nominal damages see supra at pp. ___ _____ 14-16, the residual "prevailing party" standard recently enunci- ated by a unanimous Court in Texas Teachers concededly gives us ______________ pause. The opinion cautioned that a district court might con- ________ _____ clude that a civil rights claimant was not eligible for "pre- vailing party" status if the "success [achieved] on a legal claim ____________________ ble law mandated nominal damage award). 18Appellants emphasize that Domegan could not have obtained injunctive or declaratory relief at the time judgment was entered, because the AFP had been revised in 1983 and Domegan had been released from state custody in 1988. Accordingly, relying on Hewitt and Rhodes, and the Fifth Circuit's interpretation of ______ ______ those cases in Estate of Farrar, appellants argue that the __________________ judgment in no way affected their behavior toward Domegan. ________ Unlike the plaintiffs in Hewitt and Rhodes, however, Domegan ______ ______ obtained an enforceable judgment for nominal damages redressing appellants' previous violations of Domegan's constitutional rights. We are satisfied that the intendment appellants attribute to the threshold "prevailing party" standard set out in Texas _____ Teachers would work results sufficiently foreign to the develop- ________ ing appellate caselaw under section 1988 as to make its sub ___ silentio adoption by the Supreme Court extremely improbable. ________ Thus, we do not interpret Texas Teachers or its precursors as ______________ requiring a material alteration in the future legal relationship _________ ______ between the parties. In circumstances where the wrong occasioned the claimant is nonpecuniary in nature, we think an award of nominal damages can alter the legal relationship out of which the _____ ____________ dispute arose as significantly as a large monetary award can compensate for pecuniary injury. 25 25 can be characterized as purely technical or de minimis . . . ." __ _______ Texas Teachers, 489 U.S. at 792. Under the de minimis success ______________ __ _______ standard, therefore, we must determine whether an enforceable judgment awarding nominal damages on a procedural due process claim can effect a sufficiently material alteration in the ________ parties' legal relationship to entitle the claimant to "prevail- ing party" status. First, we examine the illustration of "purely technical or de __ minimis success" taken from the Texas Teachers case itself, where _______ ______________ the plaintiff teachers' organizations successfully challenged a school policy forbidding teacher meetings during non-school hours absent prior approval from the school principal. The Court hypothesized that plaintiffs would not have qualified for "pre- vailing party" status on this basis alone, as "[t]he District Court [had] characterized this issue as 'of minor significance' and noted that there was 'no evidence that the plaintiffs were __ ________ ____ ___ __________ ____ ever refused permission to use school premises during non-school ____ _______ __________ __ ___ ______ ________ ______ __________ hours.'" Texas Teachers, 489 U.S. at 792 (quoting App. to Pet. _____ ______________ for Cert. 60a n. 26) (emphasis added). Since there was no evidence that the particular school policy ever had been, or would be, applied, their successful challenge did not avail plaintiffs of sufficient "relief" to effect a "material alter- ation in the legal relationship between the parties." Compare _______ Rhodes, 488 U.S. at 4. ______ 26 26 We interpret the Texas Teachers hypothetical to require some _______________ justiciable past, present or impending civil rights deprivation entitling the claimant to relief. Moreover, no matter how comprehensive the "relief" obtained by the claimant, unless the wrong occasioned or threatened by the challenged procedure is "significant" the alteration effected in the overall legal rela- tionship out of which the claim arose will be considered too insubstantial to satisfy the "prevailing party" test. Thus, the success achieved may be ruled purely technical or de minimis if __ _______ the civil rights violation is either too abstract or too remote in prospect for the "relief" obtained in litigation to have effected a material alteration in the relevant legal relationship between the parties. The second illustration of "technical or de minimis success" is __ _______ found in Naprstek v. City of Norwich, 433 F. Supp. 1369 (N.D.N.Y. ________ _______________ 1977). See Texas Teachers, 489 U.S. at 792. Some years ago, ___ ______________ Nadeau v. Helgemoe, 581 F.2d 275, 279 n.3 (1st Cir. 1978) (Cof- ______ ________ fin, C.J.), cited Naprstek as a case in which fee shifting would ________ have been inappropriate since "the grounds for attacking an anti- _______ quated and rarely enforced curfew statute [were found] to be 'more contrived than real.'" Id. (quoting Naprstek, 433 F. Supp. __ ________ at 1370) (emphasis added). The Supreme Court in Texas Teachers ______________ essentially identified Naprstek as an example of a purely "tech- ________ nical" victory that neither prevented any significant risk of 27 27 prospective wrongdoing nor vindicated any genuine previous or contemporaneous wrong. These exemplars imply qualitative criteria for determining "technical or de minimis" success, requiring careful analysis of __ _______ the materiality of the relief obtained in litigation to the wrong occasioned the claimant. If the wrong "redressed" was illusory or contrived, even comprehensive "relief" may amount to mere technical or de minimis success. __ _______ The third exemplar cited in Texas Teachers is New York City ______________ ______________ Unemployed and Welfare Council v. Brezenoff, 742 F.2d 718, 724 _______________________________ _________ n.4 (2d Cir. 1984) [hereinafter Brezenoff II], where the district ____________ court denied a section 1988 award because plaintiffs' success was considered purely technical or de minimis. In Brezenoff II, the __ _______ _______________ constitutional violations alleged in the complaint were compared with the relief obtained in litigation.19 The plaintiff orga- nization and some of its members launched a broadside against the regulatory framework through which the defendant agency allegedly fettered access to government buildings and restricted organiza- ____________________ 19Although ostensibly Brezenoff II compared the wrongs alleged ____________ _______ with the relief obtained, the net effect of its analysis, as in the Texas Teachers hypothetical and Naprstek, correctly resulted ______________ ________ in a qualitative comparison between the demonstrated wrong and the relief obtained. We submit that the "degree of success" achieved, which goes to the amount of the fee award, Texas ______ _____ Teachers, 489 U.S. at 790, 793; Nadeau, 581 F.2d at 281, is to be ________ ______ strictly distinguished from the quality of the relief obtained in _______ relation to the nature and significance of the established ___________ wrongdoing, which goes to the entitlement to a fee award vel non. ___ ___ 28 28 tional activities inside government buildings.20 Ultimately, the only relief the plaintiffs obtained was an order requiring that at least one representative be permitted to move freely about the designated IMC reception area. A comparative analysis of the unconstitutional action and the relief obtained demon- strates that the lawsuit effected no material alteration in the ________ relevant legal relationship out of which the litigation arose. The remedial alteration in the legal relationship between the parties amounted to a nick in the agency's regulatory armor. Neither the fabric nor the design of the regulatory framework was altered by the ruling hardly an indictment of agency overdra- fting that one member of each organization must be allowed to walk about the reception area. Thus, the Court's citation to Brezenoff II illustrates that the success achieved may be consid- ____________ ered technical or de minimis if the relief effected too insub- __ _______ ____________________ 20The complaint charged that four regulations promulgated by the New York City Human Resources Administration infringed the constitutional rights of the plaintiff organization's members "to converse with, distribute leaflets to, and collect contributions from welfare recipients and applicants on the premise of the City's Income Maintenance Centers ('IMCs')." New York City ______________ Unemployed and Welfare Council v. Brezenoff, 677 F.2d 232, 234 _______________________________ _________ (2d Cir. 1982) [Brezenoff I]. Plaintiffs failed to demonstrate ___________ the unconstitutionality of the challenged regulations narrowly confining organization activities to the first-floor reception areas of the IMCs, requiring a one-day notice of intent to utilize the IMC distribution tables, and banning solicitation of membership fees and contributions inside the IMCs. Instead, a minor provision in one of the four challenged regulations was ruled unduly restrictive; that is to say, insofar as it required all representatives of the plaintiff organization to remain at ______ __ the IMC tables. 29 29 stantial an alteration in the overall legal relationship out of which the litigation arose. The fourth exemplar offered in Texas Teachers provides similar ______________ guidance. In Chicano Police Officer's Ass'n v. Stover, 624 F.2d ______________________________ ______ 127, 131 (10th Cir. 1980), the Tenth Circuit ruled that nuisance settlements do not represent "relief" of the sort required for "prevailing party" status. Its instruction is not unlike that found in a seminal First Circuit case. See Nadeau, 581 F.2d at ___ ______ 281 (action must not have been "frivolous, unreasonable, or groundless"). Furthermore, it is in the nature of nuisance settlements that the benefits tendered in settlement have less to do with the intrinsic merit of the claim than with the cost of defending against it.21 ____________________ 21On the other hand, a conventional settlement of a significant claim may entitle the claimant to "prevailing party" status even in the absence of a final judgment. Maher v. Gagne, 448 U.S. _____ _____ 122, 129 (1980). See Forrest v. New York City Criminal Justice ___ _______ ______________________________ Agency, 549 F. Supp. 211, 213 (S.D.N.Y. 1982) (rejecting defen- ______ dant's "nuisance settlement" defense to plaintiff's claim for a 1988 attorney fee award: "Both the amount and the timing of the settlement make clear that it was not a means employed by defen- dants to be free of a frivolous claim.") (emphasis added); see _ _________ _____ ___ also Ashley v. Atlantic Richfield Co., 794 F.2d 128, 134 & n.9 ____ ______ ______________________ (3d Cir. 1986) ("nuisance settlement" inquiry not to be undertak- en as part of "prevailing party" determination, but as part of "special circumstances" determination, and stating that "the focus should be on the lack of merit in the plaintiff's case"). Cf. Dowling v. Narragansett Capital Corp., 735 F. Supp. 1105, ___ _______ ___________________________ 1111 (D.R.I. 1990) (stating that one of the purposes behind Fed. R. Civ. P. 9(b), particularly in the context of securities litigation, is to "deter groundless claims that are asserted __________ ______ solely for tactical reasons or for purposes of extracting nui- __________ ____ sance settlements") (emphasis added). _____ ___________ 30 30 The next guidepost in Texas Teachers is its admonition that the ______________ "degree of success" achieved in litigation goes to the reason- ableness of the amount of the award and "not to the availability ______ of a fee award vel non," Texas Teachers, 492 U.S. at 793; id. at ___ ___ ______________ __ 790; that is, not to the "prevailing party" determination. Texas _____ Teachers clearly considers "degree of success" a nonqualitative ________ ___ criterion relating exclusively to the amount of an award, rather than its availability. Thus, Texas Teachers and its precursors are not prologue to the ______________ quantitative "prevailing party" test advocated by appellants. Instead, differences in the degree of success achieved are reflected in the amount awarded; whereas differences in kind, as ______ suggested by the Court's articulation of the residual de minimis __ _______ success standard ("significance," "materiality"), require quali- tative assessments pertaining principally to the claimant's eligibility for a fee award. Throughout its discussion in Texas _____ Teachers, and particularly its references to the "degree of ________ success" achieved in litigation, see id. at 790, 793, the Court ___ ___ appears to intend a quantitative assessment of the claimant's success only in relation to the reasonableness of the amount of the fee awarded a "prevailing party." The "prevailing party" criteria endorsed in Texas Teachers _______________ inquire whether the plaintiff (i) obtained relief on a signifi- ________ cant claim in litigation, (ii) effecting a material alteration in ____ ________ the parties' legal relationship, (iii) that is not merely techni- 31 31 cal or de minimis in nature. See Texas Teachers, 492 U.S. at __ _______ ___ _______________ 791-93 (emphasis added). Whereas the "degree of success" achieved in litigation may affect the amount awarded, the third ______ criterion for "prevailing party" status superimposes a residual limitary standard on its companion criteria designed to ensure that entitlement to an award will depend on the qualitative ___________ ___________ significance of the relief obtained, in terms of its materiality ______ ___________ to the legal relationship which occasioned the unconstitutional action.22 Domegan obtained a final judgment for damages on a significant constitutional claim. See Carey v. Piphus, 435 U.S. 247, 266 ___ _____ ______ (1978) (as procedural due process is an "absolute" right, its denial is actionable without proof of actual injury, because of "the importance to organized society that procedural due process be observed").23 Although the monetary damage award is minus- ____________________ 22In Brezenoff II, for example, the decree derailing the "walk- ____________ about" restriction afforded relief that effected a purely techni- cal alteration in the legal relationship that gave rise to the claims in litigation. The hypothetically-limited relief dis- cussed in Texas Teachers brought no relief, since the requirement ______________ of permission to use school premises during non-school hours was never actuated or threatened. Similarly, the putative risk of injury in Naprstek was "'more contrived than real[,]'" Nadeau, ________ ______ 581 F.2d at 279 n.3, and in Stover the nuisance settlement lacked ______ the required nexus to a significant claim. 23Carey, 435 U.S. at 266, has never been limited in any Supreme _____ Court case arising under section 1988. See City of Riverside v. ___ _________________ Rivera, 477 U.S. 561, 574 (1986) (plurality op.) ("reasonable ______ fee" case, citing to Carey's "nominal damages" discussion in _____ support of Rivera view that "a civil rights plaintiff seeks to ______ vindicate important civil and constitutional rights that cannot be valued solely in monetary terms."); id. at 594 (Rehnquist, J., ___ 32 32 cule in amount, in the eyes of the law its remedial significance is substantial, as society recognizes the intrinsic deterrent effect in judgments against public officials who violate proce- dural due process rights guaranteed under the Constitution. See ___ id. & infra note 32; see also Memphis Community Sch. Dist. v. ___ _____ ___ ____ _____________________________ Stachura, 477 U.S. 299, 308 n.11 (1986) (stating: Carey "makes ________ _____ clear that nominal damages . . . are the appropriate means of 'vindicating' rights whose deprivation has not caused actual, provable injury."). Thus, in these circumstances, the final judgment awarding nominal damages for violations of the inmate- plaintiff's absolute constitutional right to procedural due process cannot be characterized, in any legitimate qualitative sense, as "purely technical or de minimis success." Furthermore, __ _______ since the procedural due process deprivation in the present case is not amenable to monetary reparation, a quantitative assessment of the relief obtained in litigation would defeat the congres- sional intent underlying the principles governing fee shifting in civil rights cases. The Supreme Court made it abundantly clear in Texas Teachers _______________ that the ultimate monitor for the "prevailing party" test is congressional intent. Congress avowedly designed section 1988 to enable private citizens to vindicate civil rights violations in ____________________ dissenting) (distinguishing Rivera case from "a case such as ______ [Carey], in which the deprivation of a constitutional right _____ necessarily results in only nominal pecuniary damages."). 33 33 circumstances where the unlikelihood of significant financial recoveries would deter their remediation due to the otherwise- unaffordable litigation costs. If private citizens are to be able to assert their civil rights, and if those who violate the Nation's fundamental laws are not to proceed with impunity, then citizens must have the opportunity to recover what it costs them to vindi- cate these rights in court. . . . . . . . [F]ee awards are essential if the Federal statutes to which [ 1988] applies are to be fully enforced. We find that the effects of such fee awards are ancillary and inci- dent to securing compliance with these laws, and that fee awards are an integral part of the remedies necessary to obtain such compliance. . . . It is intended that the amount of fees awarded under [ 1988] . . . not be reduced because the rights involved may be nonpecuniary in nature. . . . . . . If the cost of private enforcement actions becomes too great, there will be no private enforcement. If our civil rights laws are not to become mere hollow pronounce- ments which the average citizen cannot enforce, we must main- tain the traditionally effective remedy of fee shifting in these cases. S. Rep. No. 1011, 94th Cong., 2d Sess. 2, 5, 6 (1976), reprinted _________ in 1976 U.S.C.C.A.N. 5908, 5910, 5913. See also Furtado v. __ ___ ____ _______ Bishop, 635 F.2d 915, 919 (1st Cir. 1980) (emphasizing that ______ 1988 is meant to finance litigation in cases which apply (rather than create) legal rules, and stating that "pathbreaking holdings that will not be enforced are of limited public value," adding that "the 'principle' of enforcement is served by suits __ that 'merely' seek damages." (emphasis in original)). 34 34 Especially significant in the circumstances of the instant case is Congress' explicit pronouncement that "the amount of fees awarded under [ 1988] . . . not be reduced because the rights involved may be nonpecuniary in nature." S. Rep. No. 1011, at 6, reprinted in 1976 U.S.C.C.A.N. at 5913. As the Supreme Court _________ __ similarly observed, "Congress enacted 1988 specifically to enable plaintiffs to enforce the civil rights laws even where the amount of damages at stake would not otherwise make it feasible for them to do so . . . ." City of Riverside v. Rivera, 477 U.S. _________________ ______ 561, 577 (1986) (plurality op.).24 ____________________ 24Four years before Congress enacted the Civil Rights Attorney's Fees Awards Act of 1976 (the "Act"), this court reversed a district court order denying a fee award to a successful 1982 claimant. The reversal was predicated on public policy consider- ations which were explained as follows: The violation of an important public policy may involve little by way of actual damages, so far as a single individu- al is concerned, or little in comparison with the cost of vindication, as the case at bar illustrates. If a defendant may feel that the cost of litigation, and, particularly, that the financial circumstances of an injured party may mean that the chances of suit being brought, or continued in the face of opposition, will be small, there will be little brake upon deliberate wrongdoing. Knight v. Auciello, 453 F.2d 852, 853 (1st Cir. 1972) (per ______ ________ curiam). These very words were quoted four years later on the floor of the United States Senate by the sponsor of the Senate bill subse- quently enacted into law as the Act. 122 Cong. Rec. 33, 313-14 (1976) (remarks of Sen. Tunney); see 122 Cong. Rec. 33,314 (1976) ___ (remarks of Sen. Kennedy) ("[C]ivil rights cases unlike tort or antitrust cases do not provide the prevailing plaintiff with a large recovery from which he can pay his lawyer."), quoted ______ in Rivera, 477 U.S. at 577 (plurality op.); see also H.R. Rep. __ ______ ___ ____ No. 1558, 94th Cong., 2d Sess. 9 (1976) (noting importance of fee 35 35 Unless private citizens are to be denied "the opportunity to recover what it costs them to vindicate [their civil] rights in court," S. Rep. No. 1011, at 2, reprinted in 1976 U.S.C.C.A.N. at _________ __ 5910, contrary to the explicit intent of Congress and the in- struction in Texas Teachers,25 an enforceable final judgment on ______________ ____________________ awards in protecting civil and constitutional rights, given "immunity doctrines and special defenses" which "preclude or severely limit" availability of damages), reprinted in Subcomm. _________ __ on Constitutional Rights, Senate Comm. on the Judiciary, 94th Cong., 2d Sess., Civil Rights Attorney's Fees Awards Act of 1976: Source Book: Legislative History, Texts, and Other Documents 217 (Comm. Print 1976) [hereinafter Source Book]. ______ ____ 25Throughout the legislative history of the Act, Congress recog- nized the need to protect civil rights claimants whose financial circumstances would foreclose litigation aimed at vindicating deprivations of important nonpecuniary rights. S. Rep. No. 1011, at 2, reprinted in 1976 U.S.C.C.A.N. at 5910 ("In many cases _________ __ arising under our civil rights laws, the citizen who must sue to enforce the law has little or no money with which to hire a lawyer. If private citizens are to be able to assert their civil rights . . . then [they] must have the opportunity to recover what it costs them to vindicate these rights in court."); H.R. Rep. No. 1558, at 1, reprinted in Source Book 209 (recognizing _________ __ ______ ____ that it is important that "the judicial remedy [be] full and complete," and stating, "[b]ecause a vast majority of the victims of civil rights violations cannot afford legal counsel, they are unable to present their cases to the courts."); Rivera, 477 U.S. ______ at 577 (plurality op.) (quoting floor debate remarks by members of Congress). The remarks of Rep. Hamilton Fish are particularly noteworthy in the present context: Without the provision of attorney's fees, it would be very difficult to bring cases such as the following: . . . . Fourth. Suits under [42 U.S.C. 1983 et al.] by inmates of a penitentiary alleging violations of the inmates' rights under the 1st, 8th, 13th, and 14th amendments. 122 Cong. Rec. 35,126 (1976) (remarks of Rep. Fish). 36 36 a significant constitutional claim which materially alters the rights and responsibilities of the parties to the legal relation- ship in which the claim arose cannot be deemed "purely technical or de minimis" success simply because it vindicates a nonpecuni- __ _______ ary deprivation. As we are persuaded that the nominal damage award effected a "material alteration of the legal relationship of the parties in a manner which Congress sought to promote in __ _ ______ _____ ________ ______ __ _______ __ the fee statute," Texas Teachers, 492 U.S. at 792-93 (emphasis ___ ___ _______ ______________ added), it cannot be deemed "purely technical or de minimis" __ _______ success simply because the plaintiff sustained no injury of the sort traditionally considered amenable to compensatory damages. c. "Sole Object" Test c. "Sole Object" Test _________________ Appellants vigorously urge, however, that no fee award should have been allowed, as Domegan did not sue for nominal damages but for substantial compensatory and punitive damages. Relying on Estate of Farrar v. Cain, 941 F.2d 1311 (5th Cir. 1991), cert. _________________ ____ ____ granted sub nom. Farrar v. Hobby, 112 S. Ct. 1159 (1992), appel- _______ ___ ____ ______ _____ lants argue that Domegan's inability to establish an entitlement to compensatory or punitive damages required a determination that the nominal damage award represented de minimis success. __ _______ Appellants' contention runs counter to the formulation in Texas _____ Teachers, 492 U.S. at 792-93, which precludes consideration of ________ the "degree of success" in connection with the "prevailing party" test. de Jesus v. Banco Popular de Puerto Rico, 918 F.2d 232, ________ _____________________________ 37 37 234 (1st Cir. 1990) (rejecting defendant's attempt to limit "prevailing party" status to plaintiffs "whose damage awards closely approximate the sums sought").26 In Estate of Farrar, _________________ 941 F.2d 1311, the Fifth Circuit did not conclude and, we submit, ___ could not have concluded, in light of Carey and the congressional _____ ____________________ 26We fail to see how a material alteration of a legal relation- ship is made "non-material" through reference to relief not obtained. The corollary that a non-material alteration does not become material merely because it represents the full relief sought was recognized in Waterman S.S. Corp. v. Maritime ____________________ ________ Subsidy Bd., 901 F.2d 1119 (D.C. Cir. 1990) (EAJA case), where ____________ the plaintiffs were deemed prevailing parties on the basis of a district court order remanding their case to the administrative agency. The Court of Appeals for the District of Columbia Circuit reversed on the ground that the order of remand afforded no relief on the merits. The court rejected the contention that a bare remand constitutes some of the benefit sought by a plain- tiff whose main purpose in bringing suit was to secure a remand: To the extent [it is] argue[d] that the concept of benefit should be proportional to what is sought, we disagree . . . . It would seem absurd to grant fees to [] a party [seeking only a remand], while denying them to a party that differs only in that it asked for a more complete victory . . . and lost on that . . . . Proportionality would come in only after an adequate victory is found and the court considers what share of the fees is reimbursable. Waterman S.S. Corp., 901 F.2d at 1123; see also Gillespie v. ____________________ ___ ____ _________ Brewer, 602 F. Supp. 218, 223 (N.D.W. Va. 1985) ("The nature or ______ importance of an action does not vary in proportion to the amount of monetary relief requested."). Had Domegan sought only nominal damages on his procedural due process claim, there would be no question, under our analysis, that the comprehensive relief obtained through the nominal damage award would be sufficient for "prevailing party" status. Compare _______ Waterman S.S. Corp., 901 F.2d at 1123. That Domegan may have ____________________ sought compensatory damages, but see infra nn. 28 & 30, would not ___ ___ _____ detract from such a "prevailing party" finding. Of course, as we have stated, adjustment in the amount of the fee award may be ______ ___ appropriate in certain circumstances in response to a great disparity between the damages sought and recovered. See, e.g., ___ ____ Foley v. City of Lowell, 948 F.2d 10, 19-20 (1st Cir. 1991). _____ ______________ 38 38 intent underlying section 1988, that a nominal damage award invariably constitutes de minimis success. Rather, the court __ _______ held: "when the sole object of a suit is to recover money ____ damages, the recovery of one dollar is no victory under 1988." Estate of Farrar, 941 F.2d at 1315 (emphasis added) ("This was no ________________ struggle over constitutional principles. It was a damage suit and surely so since plaintiffs sought nothing more.").27 Respectfully, we are unable to agree that a bona fide civil ____ ____ rights action converts to a mere "damage suit" simply by an adjustment to the ad damnum, particularly where the claim can __ ______ (but need not) be brought only for nominal damages based on an alleged deprivation of an "absolute" constitutional right. See ___ Carey, 435 U.S. at 266; see also Stachura, 477 U.S. at 308 n.11. _____ ___ ____ ________ The present cause of action arose under the United States Consti- tution and was not converted into a mere tort claim for damages simply because Domegan demanded compensatory relief.28 See ___ ____________________ 27The Supreme Court rejected the Fifth Circuit's "central issue" test in Texas Teachers, 489 U.S. at 791. In Estate of Farrar, ______________ ________________ 941 F.2d at 1315, the court formulated its "sole object" test. 28We note also that Domegan initially sought declaratory and injunctive relief but properly refrained from pursuing those claims following his release from state custody. Cf., e.g., ___ ____ Rhodes, 488 U.S. at 4 (former inmates not "prevailing parties," ______ as case became moot before entry of judgment for equitable relief); Preiser v. Newkirk, 422 U.S. 395, 402-03 (1975) (inmate- _______ _______ 's action for equitable relief from wrongful transfer was mooted by retransfer of inmate after filing of complaint; there was no legitimate concern that the wrongful transfer would affect "good time" or parole decisions, and no reasonable expectation that the alleged wrong would be repeated); American Postal Workers Union ______________________________ v. Frank, No. 91-1633, slip op. at 9 (1st Cir. July 6, 1992) _____ 39 39 also Blanchard v. Bergeron, 489 U.S. 87, 96 (1989) (rejecting ____ _________ ________ "the notion that a civil rights action for damages constitutes nothing more than a private tort suit benefiting only the indi- vidual plaintiffs whose rights were violated") (quoting Rivera, ______ 477 U.S. at 574 (plurality op.)). Domegan did not deny culpability for the disciplinary charges which led to the AFP placement. Instead, he claimed that he was wrongfully placed and kept on the AFP without procedural due process. Accordingly, even if de facto isolation and an inade- __ _____ quate diet had caused provable injury amenable to monetary compensation, Domegan could not have established an entitlement to compensation for the substantive deprivation.29 See Carey, ___ _____ 435 U.S. at 260, 263; Rodriguez de Quinonez v. Perez, 596 F.2d ______________________ _____ 486, 491 (1st Cir.), cert. denied, 444 U.S. 840 (1979). The only ____ ______ wrong occasioned Domegan was the unconstitutional denial of his absolute right to procedural due process. Although a civil rights plaintiff may demand compensatory damages for mental and ____________________ ("The presence of viable damages claims . . . does not establish a 'present case or controversy regarding [equitable] relief,' O'Shea [v. Littleton], 414 U.S. [488,] 495-96 [(1974)]."). ______ _________ 29Domegan asserted Eighth Amendment claims, and companion sub- stantive due process claims, for damages allegedly sustained as a consequence of the wrongful procedural placement on AFP and other AFP-related conduct by prison officials. The jury found for the defendants on these claims. Under Texas Teachers, Domegan's lack ______________ of success on those claims, and thus on a large part of his complaint, goes to the degree of success and the amount of the 1988 award, not its availability. See Texas Teachers, 489 U.S. ___ ______________ at 792. 40 40 emotional distress resulting from a procedural due process deprivation,30 see Carey, 435 U.S. at 263-64 (damages for men- ___ _____ tal and emotional distress); Maldonado Santiago v. Velazquez ___________________ _________ Garcia, 821 F.2d 822, 829 (1st Cir. 1987) (same), monetary ______ damages are not presumed to flow from the violation. Carey, 435 _______ ___ ________ _____ U.S. at 260-64; id. at 263 ("[W]here a deprivation is justified ___ but procedures are deficient, whatever distress a person feels may be attributable to the justified deprivation rather than to deficiencies in procedure.").31 d. Summary d. Summary _______ ____________________ 30Domegan demanded compensatory damages aggregating $50,000 in ___________ connection with all his federal constitutional claims and the ___ ___ state law claim. Moreover, the special verdict form indicates that the entire $350,000 punitive damage demand related to the ______ Eighth Amendment claim. 31This is in noteworthy contrast to certain other constitutional violations resulting in nonpecuniary injury, such as deprivations of the right to vote, for which presumptive damages may be recoverable for the definite, though not readily measurable, harm ________ presumed to flow from the bare violation. See Stachura, 477 U.S. ___ ________ at 310-11 & 311 n.14 (discussing Nixon v. Herndon, 273 U.S. 536 _____ _______ (1927), and other cases); Carey, 435 U.S. at 264-65 & 265 n.22 _____ (emphasizing that "elements and prerequisites for recovery" for one constitutional deprivation are not necessarily appropriate for another; discussing voting rights cases); see also Walje v. ___ ____ _____ City of Winchester, Kentucky, 827 F.2d 10, 12-13 (6th Cir. 1987) _____________________________ (presumed damages available for First Amendment deprivation not involving the right to vote); City of Watseka v. Illinois Pub. _______________ _____________ Action Council, 796 F.2d 1547, 1559 (7th Cir. 1986) (presumed _______________ damages for deprivation of First Amendment solicitation rights), aff'd, 479 U.S. 1048 (1987). But cf. Schneider v. Colegio de _____ ___ ___ _________ __________ Abogados de Puerto Rico, 917 F.2d 620, 639 (1st Cir. 1990) _________________________ (upholding nominal damage award in First Amendment case where plaintiff offered no proof of damages), cert. denied, 112 S. Ct. ____ ______ 865 (1992). 41 41 Supreme Court analysis on the sufficiency of the relief ob- ______ tained in litigation invariably centers on its capacity to redress real wrongdoing. The Supreme Court has never ruled (nor adverted with approval to a case which has held) an award of fees improper under section 1988 merely because the monetary relief obtained in litigation was de minimis in amount. All cases __ _______ adverted to in Texas Teachers involved circumstances in which the ______________ wrong established was more illusory than real, or the relief _____ ___________ ______ obtained in litigation was so insubstantial in relation to the ________ relevant legal relationship as to be considered "purely technical or de minimis." Thus, "prevailing party" status in the instant __ _______ case was neither precluded by the inability to obtain a compen- satory damage award on the procedural due process claim, nor by the failure to establish liability on other claims, which are matters appropriately considered in assessing the reasonableness of the fee award. See Texas Teachers, 489 U.S. at 793; de Jesus, ___ ______________ __ _____ 918 F.2d at 234 (citing Texas Teachers). ______________ Were we to conclude that a nominal damage award in a civil rights action based on a nonpecuniary deprivation represents mere de minimis success, we would rule out fee shifting under section __ _______ 1988 notwithstanding that the claimant recovers an enforceable judgment on a significant constitutional claim. We find no warrant in Supreme Court caselaw for doing so. See Carey, 435 ___ _____ U.S. at 266 (procedural due process deprivation is actionable without proof of injury because the right to procedural due 42 42 process is "absolute," and "because of the importance to orga- nized society that procedural due process be observed.");32 see ___ also Stachura, 477 U.S. at 380 n.11 (nominal damage award appro- ____ ________ priate to vindicate rights whose infringement causes no "actual" injury). Thus, we do not understand Texas Teachers to condone _______________ (let alone require) disentitlement to "prevailing party" status merely because the final judgment redressing a procedural due process violation awards only nominal damages. A nominal damage award based on a denial of the predeprivation process due the claimant whose culpability is later conceded presents a tantalizing candidate for characterization as "techni- cal or de minimis success." Yet to do so would be to conclude __ _______ that the constitutional violation itself was de minimis, which __ _______ cannot be done under current Supreme Court caselaw, see, e.g., ___ ____ Carey, 435 U.S. at 266, our own precedent, see, e.g., Perez v. _____ ___ ____ _____ University of Puerto Rico, 600 F.2d 1, 2 (1st Cir. 1979), or the _________________________ congressional intent underlying section 1988. We therefore conclude that "prevailing party" status is appropriate where the claimant establishes a significant procedural due process depri- vation and obtains an enforceable nominal damage award against the responsible public officials. ____________________ 32Significantly, the Court noted in Carey that "the potential _____ liability of 1983 defendants for attorney's fees . . . provides additional and by no means inconsequential assurance that agents of the State will not deliberately ignore due process rights." Carey, 435 U.S. at 257 n.11. _____ 43 43 2. Special Circumstances 2. Special Circumstances _____________________ Appellants argue that Domegan is entitled to no fee award, because he allegedly exhibited an "inexcusable reaching for fees" by submitting an inflated fee application. See Lewis v. Kendric- ___ _____ ________ k, 944 F.2d 949, 958 (1st Cir. 1991) (on rehearing).33 In _ Lewis, we denied a fee award where the application reflected (1) _____ no "good faith" effort to exclude excessive, redundant, or other- wise unnecessary hours, (2) no reduction for time spent on unsuc- cessful claims, and (3) no allowance for the limited "degree of success" achieved by the plaintiff. Id. at 957-58 (relying on ___ Hensley v. Eckerhart, 461 U.S. 424, 434, 436 (1983)). On the _______ _________ other hand, the present fee request reflects reasonable regard for the concerns expressed in Lewis, as evidenced in part by the _____ fact that the number of hours for which compensation was request- ed approximates only one third of the hours counsel devoted to the litigation. These self-imposed, pre-application cuts sub- stantiallyanticipated virtuallyallofappellants' presentcontentions.34 ____________________ 33As the present claim is raised for the first time on appeal, we review for "plain error" indicative of "a 'clear miscarriage of justice' . . . ." Playboy Enterprises, Inc. v. Public Serv. __________________________ ____________ Comm'n., 906 F.2d 25, 40 (1st Cir.) (quoting Brown v. Trustees of _______ _____ ___________ Boston Univ., 891 F.2d 337, 359 (1st Cir. 1989), cert. denied, _____________ ____ ______ 111 S. Ct. 388 (1990)). 34An examination of certain objections raised by appellants demonstrates that the fee application was prepared with no purpose to inflate fees. For instance, appellants suggest that Procter & Hoar's over-staffing and personnel changes caused "a spate of conferences, cross-conferences, drafts, revisions, edits of other people's drafts and revisions, etc., for which plaintiff sought compensation." Our review of the application allays any 44 44 Appellants contend that the fee application inadequately reflected the limited "degree of success" achieved in litigation, as demonstrated by the sizeable reduction imposed by the district court, and, therefore, that the total compensation requested was ____________________ such concerns. Approximately 267 of the 352 time entries in the fee application pertain to services performed by the lead partner and the primary associate who took charge of the litigation several years after Procter & Hoar was appointed. Moreover, the application pares the total hours billed, in recognition of the fact that "some of the time billed was redundant, owing to unavoidable changes of staffing on the case, or was less effi- cient than it might have been because some assignments were given in the first instance to law clerks and interns." Appellants further contend that the fee request was inflated, because, they say, virtually the entire trial was dedicated to litigating the unsuccessful claims, lead trial counsel sought compensation for more than ten hours daily even though the trial was conducted on a half-day basis, and compensation was requested for two trial attorneys. Nevertheless, it was not improper to request compensation for the trial time spent securing the due process nominal damage award. In recognition of the lack of success on the other claims, compensation was requested for only one third of the trial time. Contrary to appellants' suggestion, moreover, we do not find the pretrial discovery entries exces- sive, nor, for the most part, inclusive of work for which compen- sation should not have been sought. Virtually all of the discov- ery services for which compensation was requested (including the deposition of a Department of Correction nutritionist and the interrogatories propounded to victorious defendants) were not plainly unrelated to the successful due process claim, in support of which evidence was needed to establish the existence and nature of the due process deprivation. See infra note 40. ___________ ___ _____ Appellants point to a handful of "mixed" entries pertaining to amendments to the complaint which are not compensable because they related to unsuccessful claims (even though each entry included some compensable services as well). Likewise, a number of other "mixed" entries relating to unsuccessful claims should not have been included in the fee application. But for these minor exceptions, however, the fee application accorded due regard to the requirement that compensation not be sought for services rendered on unsuccessful claims. In all fairness, we cannot conclude that these lapses in precision fee-cutting approached those involved in Lewis, such that the present award _____ again should be slashed under the "special circumstances" test. 45 45 inflated. Our review discloses, however, that appellants neither identify any substantial failure of "reasonable compliance with the judicial pronouncements" relating to fee requests, Lewis, 944 _____ F.2d at 958 (on rehearing), nor challenge the veracity of the time sheets or the supporting affidavits. Although we conclude that further reductions are required, we discern no basis for questioning the bona fides of the fee application under the ____ _____ "special circumstances" exception. 3. Size of the Award 3. Size of the Award _________________ The fee application requested an award totaling $86,016.80 for legal services performed during the five-year period spanned by the litigation. The district court found "the rates and hours charged for various aspects of the case to be reasonable,"35 ____________________ 35The only appellate challenge to the reasonableness of these hourly rates asserts that the district court was required to com- pensate counsel at different rates for different services, but instead allowed a flat hourly rate for all legal services per- formed by the same attorney. We do not accept Domegan's conten- tion that appellants waived their right to contest the reason- ______ ableness of the fee award on this basis by reason of their failure to present evidence as to reasonable hourly rates. Cf. ___ Blum v. Stenson, 465 U.S. 886, 892 n.5 (1984) (failure to present ____ _______ evidence supporting challenge to the "accuracy and reasonableness of the hours charged"). Nevertheless, their failure to present evidence that the flat rates approved by the district court were unreasonable means that appellants cannot prevail on their "flat _______ rate" challenge. Since the "bottom line" is a reasonable fee award, their "flat rate" challenge cannot succeed unless appel- lants show that the flat rates allowed by the district court were not reasonable average rates for the types of legal services determined compensable by the district court. We do not think appellants can manage their burden without establishing the hourly rates which they would propose be used in place of the flat rates approved by the district court, especially since the 46 46 but halved the request to reflect the limited degree of success achieved in litigation. See Hensley, 461 U.S. at 434-37. The ___ _______ $41,441.55 award purportedly allowed compensation only for the 388.5 hours "explicitly spent on the due process issue, the summary judgment motion, and the [interlocutory] appeal . . . ." We review the reasonableness of the attorney fee award for abuse of discretion, finding an abuse "'when a material factor deserving significant weight is ignored, when an improper factor is relied upon, or when all proper and no improper factors are assessed, but the court makes a serious mistake in weighing them.'" Foster v. Mydas Assoc., Inc., 943 F.2d 139, 143 (1st ______ ___________________ Cir. 1991) (quoting Independent Oil & Chem. Workers of Quincy, ____________________________________________ Inc. v. Proctor & Gamble Mfg. Co., 864 F.2d 927, 929 (1st Cir. ____ __________________________ 1988)). "District courts have discretion when awarding fees and expenses under 42 U.S.C. 1988, [Hensley], and appellate courts _______ accord deference to the exercise of that discretion." Grendel's _________ ____________________ approved rates do not appear excessive on their face. Although appellants contend that flat rates are impermissible as a matter of law, we have never indicated as much, see infra p. 52; nor do ___ _____ we believe it necessary to reach the issue on the present record. See Foley v. City of Lowell, Mass., 948 F.2d 10, 21 (1st Cir. ___ _____ ______________________ 1991) (Where "a fee target has failed to offer either counter- vailing evidence or persuasive argumentation in support of its position, we do not think it is the court's job [] to do the target's homework . . . ."). We likewise reject the contention that appellants failed to preserve their challenges to particular hours billed, by failing _____ to present countervailing evidence below. These challenges founded primarily on caselaw, the insufficiency of the billing entries, and argumentation based on the circumstances in the present case did not depend on evidentiary support. 47 47 Den, Inc. v. Larkin, 749 F.2d 945, 950 (1st Cir. 1984). The __________ ______ district court enjoys broad discretion in setting the amount of an attorney fee award. de Jesus v. Banco Popular de Puerto Rico, ________ ____________________________ 951 F.2d 3, 5 (1st Cir. 1991) [hereinafter de Jesus II]; United ____________ ______ States v. Metropolitan Dist. Comm'n, 847 F.2d 12, 14 (1st Cir. ______ _________________________ 1988). On an "abuse of discretion" review, the basis for the fee award is to be reviewed carefully, and we must ensure that the amount is reasonable, but "we normally prefer to defer to any thoughtful rationale and decision developed by a trial court and to avoid extensive second guessing." Grendel's Den, 749 F.2d at _____________ 950. a. Disproportion a. Disproportion _____________ Appellants contend that the attorney fee award is grossly disproportionate to the one dollar damage award, particularly in light of the damages demanded. The amount of the monetary recovery is "certainly [a] relevant" factor to be considered in setting the size of an attorney fee, Rivera, 477 U.S. at 574 ______ (plurality op.); Foley, 948 F.2d at 19-20 (amount of damages _____ relevant to determination of reasonable fee; fee may be reduced when amount of damages sought is large but recovery small); Home ____ Placement Serv., Inc. v. Providence Journal Co., 819 F.2d 1199, _____________________ _______________________ 1210 (1st Cir. 1987) ("recovery of only nominal damages can be cause for reducing a fee award if the litigation is not otherwise significant") (Clayton Act case); Perez, 600 F.2d at 2 (nominal _____ 48 48 damage award one factor that may affect amount of fee). Nevertheless, disproportion alone does not render an award unreasonable, Rivera, 477 U.S. at 574 (plurality op.); id. at 585 ______ ___ (Powell, J., concurring); Foley v. City of Lowell, Mass., 948 _____ _______________________ F.2d 10, 20 (1st Cir. 1991 ) (reasonable fee may exceed damage recovery "several times over"), and a judgment for nominal damages may warrant a substantial fee award. Aubin v. Fudala, _____ ______ 782 F.2d 287, 290-91 (1st Cir. 1986) (suggesting intrinsic value in "simple declaration of violations of federal law."); Perez, _____ 600 F.2d at 2 n.2 (policy of awarding nominal fees for recovery of nominal damages would "handicap those seeking to assert civil rights to the same extent as denying fees altogether"); see also ___ ____ Ruggiero v. Krzeminski, 928 F.2d 558, 564 (2d Cir. 1991) (uphold- ________ __________ ing $12,833.34 fee based on $1.00 damage award); Allen v. Higgin- _____ _______ s, 902 F.2d 682, 684-85 (8th Cir. 1990) ($10,000 fee based on _ $1.00 damage award); Home Placement Serv., 819 F.2d at 1212 ______________________ (awarding $16,989 for portion of litigation relating to nominal damage award); McCann v. Coughlin, 698 F.2d 112, 129 (2d Cir. ______ ________ 1983) (that successful procedural due process claimant who recovered $1.00 damage award did not warrant reduction in attor- ney fee award of almost $50,000).36 ____________________ 36Of course, the "degree of success" achieved in litigation is a "critical" factor in fixing the amount of an award under section 1988. Texas Teachers, 489 U.S. at 789-90 (discussing Hensley). ______________ _______ Appellants do not contend, however, that the district court failed to reduce the fee request to reflect the recovery of only ____ a nominal damage award on the procedural due process claim and 49 49 b. Summary Judgment b. Summary Judgment ________________ Appellants argue that the district court should not have allowed compensation for all legal services attributed to the summary judgment proceedings, since a significant portion went toward the unsuccessful Eighth Amendment claims, which appellants assert were wholly distinct from the successful due process claim. See Hensley, 461 U.S. at 434-35 (no compensation allow- ___ _______ able for services on unsuccessful claims segregable from success- ful ones); Wojtkowski v. Cade, 725 F.2d 127, 130 (1st Cir. 1984) __________ ____ (same). The district court implicitly determined, however, that the due process and Eighth Amendment claims were interrelat- ed.37 As its interrelatedness finding is adequately supported ____________________ the lack of success realized on the other claims in litigation. Rather, even though the court reduced the number of compensable hours from 808.3 to 388.5 for these purposes, appellants still _____ contend that the "extraordinarily high award" constituted an abuse of discretion. As we find no abuse of the district court's broad discretion based on the disproportion between the fee and damage awards see Nydam v. Lennerton, 948 F.2d 808, 813 ___ _____ _________ (1st Cir. 1991) (appellate court will not interfere "'[w]here . . . [a] district court [has] carefully weighed the correct factors and arrived at a result within a supportable range . . . .'") (quoting Wojtkowski v. Cade, 725 F.2d 127, 131 (1st Cir. 1984)), __________ ____ we turn to appellants' demands for further reductions relating to fees for particular services. 37After observing that "a one dollar award constitutes rather less than a resounding victory," the district court opinion quoted the following passage from Hensley: _______ If . . . a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plain- tiff's claims were interrelated, nonfrivolous, and raised in ____________ 50 50 in the record,38 we see no abuse of discretion in the district court decision to forego the request to separate the time spent on interrelated claims where it would have been largely impracti- cable to do so. Aubin v. Fudala, 821 F.2d 45, 47 (1st Cir. 1987) _____ ______ [hereinafter Aubin II]; see Hensley, 461 U.S. at 435-36 (focusing ________ ___ _______ on overall success when different claims are legally or factually __ intertwined); Nydam v. Lennerton, 948 F.2d 808, 812 (1st Cir. _____ _________ 1991) (no abuse of discretion where district court determined ____________________ good faith. Hensley, 461 U.S. at 436 (emphasis added). The section of the _______ majority opinion from which the quoted excerpt is taken provides instruction on the proper approach to fee applications for legal services on interrelated, nonsegregable claims where the claimant achieved limited success in litigation. We think it clear, therefore, that the district court recog- nized the interrelatedness of these claims. The court awarded compensation for "only those hours explicitly spent on the due process issue, the summary judgment motion, and the [defendants' interlocutory] appeal (including research on qualified immunity issues) . . . ." As we understand the district court award, since Domegan's "success [on the interrelated claims] may fairly be characterized as 'limited,'" attorney fees were awarded only for the legal services in connection with the summary judgment litigation and the interlocutory appeal. Additionally, legal services specifically devoted to the due process claim (i.e., any such services which could be separated out) were determined _____ compensable, as that was the only claim on which Domegan "gar- nered [any] success." See also infra n.40. ___ ____ _____ 38For example, even though the due process and Eighth Amendment claims differed, the "Memorandum in Support of Plaintiff's Motion for Partial Summary Judgment" reveals that they arose out of the same circumstances, and both concerned Domegan's placement on the AFP. Although not all material facts are common to both claims, the core facts are common. Moreover, both claims were dependent on the factual investigation and legal research underlying the portion of the summary judgment memorandum relating to the direct and supervisory liability of the individual appellants. 51 51 that successful and unsuccessful claims arose from core of common facts); Fishman v. Clancy, 763 F.2d 485, 491 (1st Cir. 1985) _______ ______ (same); see also Nydam, 948 F.2d at 813 (appellate court will not ___ ____ _____ interfere "'[w]here . . . [a] district court [has] carefully weighed the correct factors and arrived at a result within a supportable range . . . .'") (quoting Wojtkowski, 725 F.2d at __________ 131). Appellants point to certain time-sheet entries which reflect services devoted to the successful "due process" claim or the __ unsuccessful Eighth Amendment claim.39 Of course, the inter- relatedness finding is not undermined simply because it may have _______ been practicable to discern some further, partial distinction _______ between the services rendered on successful and unsuccessful claims. See Wagenmann v. Adams, 829 F.2d 196, 225 (1st Cir. ___ _________ _____ 1987) (upholding interrelatedness finding, noting clearly segreg- able item on billing sheets); see also Aubin II, 821 F.2d at 47 ___ ____ ________ ("It might not have been practical for the lawyers to allocate each hour among the several factually related legal claims.") ____ (emphasis added). For example, a billing entry which distin- guishes between legal research on different claims does not necessarily enable a clear allocation of fees where the different ____________________ 39Only one of these time-sheet entries was approved in connection with the fee award for summary judgment services, an entry for 3.8 hours spent on the due process and Eighth Amendment claims, and the facts section of Domegan's summary judgment memorandum. ___ ___ _____ We adjust for this entry (# 111) as indicated below. See infra ___ _____ note 44. 52 52 claims are factually intertwined. See, e.g., supra note 39. As _________ ___ ____ _____ these summary judgment claims were interrelated,40 appellants' complaint that compensation should not have been allowed because the time entries might have distinguished more sharply between the due process and Eighth Amendment claims is unavailing in the present circumstances. See Rivera, 477 U.S. at 570 n.4 (plurali- ___ ______ ty op.) ("[W]hile it is true that some of the disputed time records do not identify the precise claims worked on at the time, we find this lapse unimportant, in light of the District Court's finding that all of respondents' claims were interrelated."). The award of fees for professional services in the summary judgment proceedings must also be viewed in the context of the award as a whole. The district court awarded fees only for pretrial summary judgment services, the interlocutory summary judgment appeal, and the services specifically related to the due ____________________ 40Appellants urge that these claims were entirely separate, due to the fact that the Eighth Amendment claim concerned so-called "substantive conditions of confinement" while on the AFP, whereas the due process claim dealt with "procedural issues before ______ implementation of the AFP." However, as Domegan points out, one of the summary judgment disputes turned on whether due process protection attached, which depended on whether appellants' actions constituted punishment as distinguished from mere admin- istrative restraint. The due process portion of the summary judgment memorandum therefore focused in part on the nature of the deprivations caused by the AFP placement, and the lack of a sufficient administrative rationale for the deprivations. ("Nutritionally deficient and unvaried meals in no way advance the interest in preventing health hazards caused by thrown food and waste."). Thus, this section of the memorandum did rely on evidence as to the conditions of confinement while Domegan was on the AFP. 53 53 process claim. Consequently, due to the interrelatedness of the Eighth Amendment and due process claims, as a practical matter essentially no fee award was made for virtually all legal servic- es devoted to pretrial discovery and to the trial itself, since such entries did not distinguish among interrelated claims. Furthermore, with the exception of the time devoted to the summary judgment proceedings and the related interlocutory appeal, the district court rationale ensured that counsel were penalized for any failure to segregate successful and unsuccess- ful claims on their billing sheets. Thus, the district court rationale affords counsel a substantial inducement to maintain detailed time records, wherever practicable clearly delineating the particular claims and issues to which the legal services related. See Hensley, 461 U.S. at 437 (billing records should ___ _______ enable court to identify distinct claims); see also Grendel's ___ ____ _________ Den, 749 F.2d at 952 (substantial fee reduction appropriate if ___ detailed contemporaneous time records not kept); Wojtkowski, 725 ________ __________ F.2d at 130 (billing sheets should distinguish between particular issues); Nadeau, 581 F.2d at 279 (same). ______ Careful review reassures us that the district court tailored its total award to reflect the value of the legal services in light of the time reasonably required for their performance and 54 54 the degree of success achieved.41 Gabriele v. Southworth, 712 ________ __________ F.2d 1505, 1507 (1st Cir. 1983) ("Nor should the judge become so deluged with details that [s]he is unable to view the claims for fees in perspective. [S]he must retain a sense of overall proportion."). There was no abuse of discretion in determining the number of compensable hours. See United States v. Metropoli- ___ _____________ __________ tan Dist. Comm'n, 847 F.2d 12, 17 (1st Cir. 1988) (separation of ________________ "wheat from chaff" in fee award context is, "within broad lim- its," a matter for the district court's discretion).42 c.Uniform Hourly Rates c.Uniform Hourly Rates ____________________ ____________________ 41In response to the limited "degree of success" achieved in litigation, the district court halved the fee request, even _______ though the request sought compensation only for about one third the total time counsel devoted to the case. Cf. Home Placement ___ _______________ Serv., 819 F.2d at 1211-12 (awarding 50% of fees related to _____ portion of litigation in which nominal damages were obtained). 42Appellants argue that the district court should have disallowed fees for legal services on the unsuccessful due process claims against their codefendants. Yet appellants propose no prac- ticable method for doing so. See Cobb v. Miller, 818 F.2d 1227, ___ ____ ______ 1233-34 (5th Cir. 1987) (reversing fee-reduction order where plaintiff succeeded on but one of three interrelated claims against different defendants: interrelated claims did "not arise from a course of conduct that is easily differentiated on the basis of each defendant."). The only significant summary judg- ment services which might conceivably have been distinguished on such a basis would have been legal research and drafting related to the supervisory liability of the appellants, as distinguished ___ __________ from their victorious codefendants. As for any other services which might have been distinguished on the basis of the particu- lar defendant involved, (e.g., pretrial discovery), the district ____ court allowed no compensation. In sum, appellants have failed to demonstrate that the fee award includes compensation for any significant, readily-segregable services specifically relating to the victorious codefendants. 55 55 Appellants assert error in the district court's approval of a uniform hourly rate for all legal services performed by each attorney regardless of the nature of the services rendered (e.g., research, conferencing, court appearances). In Maceira v. Pagan, _______ _____ 698 F.2d 38, 41 (1st Cir. 1983), we noted that, "while Miles v. _____ Sampson, [675 F.2d 5, 9 (1st Cir. 1982),] upon which [appellants] _______ rel[y], indicates the importance of using more than one rate when appropriate, it does not hold that differential rates are always ______ required." Maceira, 698 F.2d at 41 (citing cases) (emphasis in _______ original). Although it would have been within the bounds of the district court's broad discretion to assign differential rates for various legal services, appellants proposed no alternate rates and submitted no evidence that the rates charged by Procter & Hoar were not reasonable. We find no abuse of discretion in the decision to forego differential rates in these circumstances. d.Excessive Hours d.Excessive Hours _______________ Appellants contend that the 247 hours attributed to the summary judgment litigation, and the 152 hours to the related interlocu- tory appeal, were excessive. The hours determined compensable by the district court do not appear excessive on their face and no particular rationale is assigned in support of the allegation of excessiveness as it relates to the summary judgment litigation. We recognize that the district court was better situated to evaluate whether the time spent on these services was reasonably 56 56 necessary. See Foley, 948 F.2d at 19 ("[A]n appellate tribunal ___ _____ lacks the means to replicate the trial court's first-hand knowl- edge of the litigation and its nuances."); Wagenmann, 829 F.2d at _________ 224-25 (district court "has far greater familiarity than do we with how much was done, who did it, and how effectively the result was accomplished"); Chalmers v. Los Angeles, 796 F.2d ________ ____________ 1205, 1211 (9th Cir. 1986) ("The district court is in the best position to determine in the first instance the number of hours reasonably expended in furtherance of the successful aspects of a litigation."). We therefore defer to the district court's informed judgment that the hours devoted to "various aspects of the case" were reasonably efficient and necessary.43 e.Challenges to Particular Time-sheet Entries e.Challenges to Particular Time-sheet Entries ___________________________________________ ____________________ 43Appellants attempt to assign grounds for their contention that too much time was spent on the interlocutory appeal; we find none convincing. First, their contention that the request was exces- sive because Procter & Hoar did not need to compile the appendix for the interlocutory appeal (for which the district court allowed 1.5 hours of compensable time) is an insufficient basis for finding that other, necessary interlocutory appeal services (research and drafting) did not reasonably require as much time as claimed. Second, we find particularly unconvincing appel- lants' overall plaint of excessiveness, as well as their direct attack on the services performed by one attorney whose (minimal) time was spent largely in researching interlocutory appellate jurisdiction, especially since appellants had attempted to present appellate claims not subject to interlocutory appeal. See infra, pp. 54-55. The additional time reasonably spent ___ _____ successfully resisting appellants' attempt to assert appellate jurisdiction where none existed is fully compensable. Although appellants advance several other objections to the reasonableness of the hours determined compensable by the district court, we find none of sufficient moment to warrant discussion. 57 57 Appellants contend that the fee award, contrary to the district court's own criteria, includes compensation for services not devoted to the summary judgment litigation, the interlocutory appeal, or the procedural due process claim. Appellants contest the allowance of compensation based on certain "mixed" entries which appear to combine hours devoted to compensable and noncom- pensable services. Our concerns about ambiguous time-sheet entries are well recog- nized. See, e.g., Furtado v. Bishop, 635 F.2d 915, 922 (1st Cir. ___ ____ _______ ______ 1980) (disallowing compensation for "Conf[erence] G. Sousa and travel," since the entry did not indicate the time spent in conference and "we are disinclined to compensate an attorney at professional rates for travel time . . . ."). Accordingly, we have culled out, for disallowance on these grounds, various "mixed" entries to which appellants have called our attention, totaling $3,502.60.44 In other respects, we find that the district court's handling of various "mixed" time entries was well within its broad discretion. Metropolitan Dist. Comm'n, 874 _________________________ F.2d at 17 (separation of "wheat from chaff," "within broad limits," is within the discretion of the district court). Appellants challenge an apparent allowance of compensation based on "at least three" entries for research relating to ____________________ 44Thus, all compensation is denied for the services identified in the following entries: ## 36, 69, 97, 111, 124, 182, 190, 192, 195, 206, and 207; totaling 37.8 hours. 58 58 interlocutory appellate review. As the defendant state officials unquestionably were entitled to an interlocutory appeal from the denial of their motion for partial summary judgment on qualified immunity grounds, appellants insist that no interlocutory appeal research was necessary. We remind appellants that there were two other appellate claims which they had no right to present on interlocutory appeal. See Domegan v. Fair, 859 F.2d 1059, 1061- ___ _______ ____ 62 (1st Cir. 1988) (no interlocutory appeal permitted on two of appellants' three claims). We have been given no reason to believe that the services rendered in connection with these three entries were unnecessary.45 f.Computational Errors f.Computational Errors ____________________ Finally, appellants assign errors in the computation of the award, which require that the award be reduced by $165.60 (2.4 hours at $69.00 per hour); $295.00 (5.9 hours at $50.00 per hour);46 $484.50 (5.1 hours at $95.00 per hour), and increased ____________________ 45A fourth billing entry involved "[r]esearch on appealability of qualified immunity ruling." The 1.7 hours billed for this entry seem entirely reasonable, as does the .3 hour entry for a con- ference on the motion to dismiss the appeal and research on appellate jurisdiction. 46The district court apparently allowed 8.3 hours for services relating to liability issues at the pretrial discovery stage which had no connection with the interlocutory appeal or with qualified immunity. The award is reduced accordingly. 59 59 by $90.00 (1 hour at $90.00) and $40.00 (.4 hours at $100.00).47- The attorney fee award is reduced to $37,123.85. The district _________________________________________________ ____________ court judgment is affirmed, as modified; costs to appellee. __________________________________________________________ - Concurrence Follows - - Concurrence Follows - ___________________ ____________________ 47The district court allowed 55.0 hours at $95.00 per hour for services by Attorney Bagger. As appellants point out, the fee application claimed that Ms. Bagger spent 49.1 hours of compensa- ble time (on summary judgment and the interlocutory appeal) at the $95.00 hourly rate. Our review of the fee request and time sheets indicates that she actually devoted 49.9 hours, but that other minor miscalculations necessitate the net adjustment set forth in the text. 60 60 CAMPBELL, Senior Circuit Judge (Concurring). I join in Judge CAMPBELL, Senior Circuit Judge (Concurring) ____________________ Cyr's exceedingly thoughtful opinion. Even if one were not fully persuaded, the result is dictated by this Circuit's prior prece- dent and our panel is bound by stare decisis. The Supreme Court will presumably decide the matter definitively next term in Farrar v. Hobby. ______ _____ 61 61